**267 P.2d 628**

**DORAN**

**v.**

**EMPLOYMENT SECURITY AGENCY.**

**No. 8008.**

Supreme Court of Idaho.

Feb. 23, 1954.

Carver, McClenahan & Greenfield, Boise, for appellant.

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

TAYLOR, Justice.

Prior to October 15, 1952, appellant had been employed as a salesman in the shoe department of the C. C. Anderson Company at Boise. He had been irregular in punching the time clock and the department manager had given him "leeway" in that regard by O.K.'ing his time card on an average of twice a week. He had gone out for a beer occasionally and on three or four occasions in company with the manager or supervisor of his department. On October 8th at about 10:30 a. m., the manager of the department sent claimant to a repair shop with a pair of shoes. He did not return to the store that day. The manager testified that at about 3:30 p. m. he was advised by a female voice on the telephone that "Don is drunk. Do you want him to come in?" A witness at the hearing, claiming to be the woman who made the call, denied she informed the manager *that claimant was drunk, but had advised* him claimant was sick. On the hearing claimant testified the reason for his absence was:

"I had a bad cold and I didn't feel like working and it was slow business and my percentage was pretty well caught up. I had already earned my salary. Made eight percent."

The next day claimant returned and was reprimanded by the department manager. He continued to work for another week and then, without any previous arrangement or leave, failed to return. The employer did not hear from him for a week and during that time neither he nor anyone for him contacted the employer and, although he claimed to be ill, he admitted to the manager that he had been "in town." His contention before the examiner was that he did not return or contact his employer because he had been warned that if he missed another day he need not return. During the week of the claimant's absence the department manager recommended to the personnel manager that he be discharged because he had been drinking and could not be depended on, and another was employed in his place. When he did return, the personnel manager asked him to come back again, suggesting that he might be able to place him in the men's clothing department. Claimant returned three or four times during a period of two weeks, when he was finally advised that he could not be re-employed. Thereafter, claimant applied for unemployment benefits. The employer, being notified of the claim, first replied, "Was not satisfactory for department manager", and later that his termination was "due to incompetency in his work." These, not being grounds for denying eligibility, benefits were paid for four weekly periods. When the employer *was notified of the payments being* charged to its experience rating, it again protested, to-wit:

"Please be advised that Mr. Doran's conduct was a result of the use of alcohol. This made his employment with

our company unsatisfactory, both from his approach to customers and because we could not depend on him for continual service; that is to say he would leave the floor on his own free will, and not return."

 After further investigation the claims examiner determined claimant to be ineligible on the ground "that he was discharged for misconduct." At the request of the claimant the matter was then set for hearing before the appeals examiner. A hearing was had and after hearing the testimony of witnesses on both sides, the appeals examiner determined that claimant had voluntarily quit. Claimant urges inconsistency between the determination of the claims examiner that he was discharged for misconduct, and the determination of the appeals examiner that he voluntarily quit. The point, however, does not avail claimant because the record supports both misconduct and that he left his employment voluntarily without good cause. But, in either event, he would not be entitled to benefits, for, if discharged, it was for misconduct, and if he quit, it was voluntarily and without good cause. Cf. Olechnicky v. Director of Division Em. Sec., 325 Mass. 660, 92 N.E.2d 252.

 Where an employee temporarily leaves his employment, and assuming that his absence is for good cause, it is his duty to advise his employer of the reason, seek a leave of absence, and keep the employer informed of his intentions and prospects of his returning. Though circumstances may vary these duties, good faith on the part of the employee must always appear. It is the duty of the employee to have regard for the interests of his employer and for his own job security, and to act as a reasonably prudent person would in keeping contact with his employer and in securing the permanence of his employment. If he fails to do so, and leaves without attempting to secure temporary leave, or fails to take reasonable measures to keep his employer informed, and to secure agreement to his absence, he will be held to have quit voluntarily without good cause. Cierlak v. Mich. U.C.C., 4 C.C.H. § 1975.35; Hall v. Unemployment Compensation Bd. of Rev., 171 Pa.Super. 127, 90 A.2d 292; Department of Labor etc. v. Unemployment Compensation Bd. of Rev., 133 Pa.Super. 518, 3 A.2d 211; Michalsky v. Unemployment Comp. Bd. of Rev., 163 Pa.Super. 436, 62 A.2d 113; Tronieri v. Unemployment Comp. Bd. of Rev., 164 Pa.Super. 435, 65 A.2d 426; Devlin v. Unemployment Comp. Bd. of Rev., 165 Pa.Super. 153, 67 A.2d 639; Flannick v. Unemployment Comp. Bd. of Rev., 168 Pa.Super. 606, 82 A.2d 671; Schwartz v. Unemployment Comp. Bd. of Rev., 169 Pa.Super. 620, 84 A.2d 364; Rivers v. Director of Div. of Unemp. Sec., 323 Mass. 339, 82 N.E.2d 1; Olechnicky v. Director of Div. of Emp. Sec., 325 Mass. 660, 92 N.E.2d 252; State v. Hix, 132 W. Va. 516, 54 S.E.2d 198.

"It seems entirely reasonable to hold that a claimant who neglects to take those precautions to guard his job, which a reasonably prudent person would take, and who is not permitted to return to his work in consequence thereof, in effect leaves his employment voluntarily. Since claimant's unemployment was caused by his failure to take reasonable measures to preserve his relations with his employer, he should be disqualified from receiving benefits * * *." Vernon v. Unemployment Compensation Board of Rev., 164 Pa.Super. 131, 63 A.2d 383, at pages 384–385.

■ The employment security law must be liberally construed to accomplish its aims and purposes. In re Potlatch Forests, Inc., 72 Idaho 291, 240 P.2d 242. As a guide to the interpretation of the act, the legislature declared the public policy of the state to be the encouragement of "employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance." To that end, in the exercise of its police power, it provided "for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own." § 72–1302, I.C. It would

be against this declared public policy to allow unemployment security funds to be dispensed to claimants ineligible under the act in times of normal employment to such an extent that such funds would not be sufficient to provide benefits for worthy claimants in "periods of unemployment." Such a limitation upon those administering the fund is not only implicit in this declaration by the legislature, but it is specifically recognized by the act itself. § 72–1365, I.C., in part provides:

"(b) Benefits shall be paid only to the extent that moneys are available for such payments in the employment security fund."

■ The law, therefore, enjoins upon the employment security agency, and all those having to do with the administration of the law, the duty of safeguarding the employment security fund from the claims of unworthy and ineligible claimants, so that funds will be available for the relief and benefit of those whom the law seeks to protect. It is for this reason that the burden of establishing eligibility is placed upon, and must be borne by, the claimant whenever his claim to benefits is questioned. Talley v. Unemployment Compensation Div., 63 Idaho 644, 124 P.2d 784; In re Jullin, Wash., 158 P.2d 319; Wescoe v. Unemployment Compensation Bd. of Rev., 166 Pa.Super. 355, 71 A.2d 837; Broadway v. Bolar, 33 Ala.App. 57, 29 So. 2d 687.

The order appealed from is affirmed. Costs to respondent.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.